UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
          Plaintiff,

vs.                                                         Case Number: 09-10333
                                                          Honorable Julian Abele Cook, Jr..

RONALD D. PETERSON, GLEN E. JOHNSON,
and FIRST PITCH PROPERTIES, LLC,
          Defendants.
_____/

ORDER

On December 10, 2009, the Plaintiff, the United States of America, accused the Defendants, Ronald D. Peterson, Glen E. Johnson, and First Pitch Properties, LLC, *inter alia,* of engaging in a pattern or a practice of subjecting actual and prospective female tenants to sex discrimination and harassment in violation of Title VIII of the Fair Housing Act, 42 U.S.C. §§ 3601 to 3619 in connection with several rental properties owned by Peterson and First Pitch Properties and managed by Johnson. The Government has filed four motions in limine which, if granted, would exclude certain evidence from the trial. The parties have also asked the Court to decide whether holding a bifurcated trial on the issue of punitive damages is necessary. Each request is considered below.

I.

First, the Court will address the Government's request to preclude Peterson and Johnson from calling several witnesses whom it believes were belatedly disclosed without justification. Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure provides that, without awaiting a discovery request, a party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that

1

the disclosing party may use to support its claims or defenses . . . ." Furthermore, Rule 26(e) requires a party to supplement its initial Rule 26(a) disclosures if it learns that the previous disclosures were inaccurate or incomplete. Fed. R. Civ. P. 26(e)(1).[1] Rule 37(c)(1) vests the Court with broad authority to fashion an appropriate remedy for failing to comply with Rule 26(a) or 26(e):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court . . . may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1). The Sixth Circuit Court of Appeals has recognized that Rule 37(c)(1) requires "absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 -272 (6th Cir. 2010). The burden is on the potentially sanctioned party to prove harmlessness. *Id* at 272.

Here, Peterson and Johnson filed a set of initial disclosures that facially complied with Rule 26(a). However, both Defendants neglected their duties to supplement these initial disclosures in the manner that is required by Rule 26(e). Despite a July 10, 2009 scheduling order which established September 16, 2009 as the final deadline for identifying all witnesses, it appears that neither Defendant has satisfied the letter or the spirit of this governing Rule (i.e., Johnson never submitted a witness list,

---

[1]Fed. R. Civ. P. 26(e)(1) reads as follows:

A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:

(A)     in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

2

and Peterson filed a list on September 23, 2009 (one week late) which contained the names of at least sixty people, fifty-one (51) of whom the Government claims were never previously disclosed). Peterson notes that his counsel clarified "that a number of these witnesses were character witnesses, and that some of the witnesses . . . were tenants, who would testify that they were not discriminated against, even though they were evicted." (Peterson's Response to Plaintiff's Motion in Limine at 2). However, the Government complains that he has not provided contact information for these prospective witnesses or a detailed description of their projected testimony.

The Government also argues that Peterson's failure to disclose complete information about his witnesses "prevent[ed] it from determining the content of these individuals' potential testimony during the discovery period." Yet, it is worth noting that although Peterson's witness list was filed one week late, ten months have passed between the date of Peterson's disclosures and the date of the upcoming trial. The Government, having been aware of the persons who were identified as prospective witnesses, has had ample time to discover the nature and the scope of their testimonies. The Court also notes that the Government could have, but elected not to file a motion to compel the disclosures under Rule 37(a). Under these circumstances, the Court is not persuaded that the Government's efforts to prepare have been significantly impaired by Peterson's failure to timely disclose pertinent information about his witnesses. Therefore, the Government's request to preclude all fifty–one (51) of the witnesses on Peterson's September 23, 2010 witness list is denied.

As to Johnson, the Court will grant the Government's request. After providing his initial disclosures, Johnson never bothered to submit a witness list or provide the other parties with additional details about his projected witnesses until approximately two weeks prior to the scheduled date of trial. Although Rule 37(c)(1) does not compel a district judge to exclude testimony in its entirety, *Roberts v. Galen of Virginia, Inc.*, *supra* at 783, the Court finds that such a sanction is appropriate here.

Accordingly, the Court will grant the Government's request to prevent Johnson from presenting evidence or testimony at trial from the newly-disclosed witnesses identified in the final pre-trial order.

As an alternate basis for relief against Peterson, the Government asks the Court to exclude testimony about his good character under Fed. R. Evid. 404(a). Peterson has verified his desire to call three witnesses (Brenda Stumbo, Brenda McKinney, and Shirley Brown) to testify about his good character as "a law abiding citizen [who] would never acquiesce [sic] or condone sexual harassment . . . ." (Peterson's Response to Motion in Limine at 4).

Subject to two exceptions which are inapplicable here, Fed. R. Evid. 404(a) prevents a party in a civil case from using character evidence to prove conduct in conformity with a certain character trait. Fed. R. Evid. 404 Advisory Committee Notes, 2006. Peterson relies on *Crumpton v. Confederation Life Insurance Company,* 672 F.2d 1248, 1253 (5th Cir. 1982) to support his argument that the Court should admit the evidence in his favor since, in his judgment, "this is a quasi-criminal matter." In *Crumpton,* the Fifth Circuit Court of Appeals held that even if the restrictions of Rule 404(a) were applicable to the litigation there, character evidence would be admissible under one of the exceptions which favor the accused, since the issues presented in that case were close in nature to a criminal trial. *Id* at 1252. Yet, as the Government notes, this premise has been squarely rejected by the drafters of Rule 404(a), who have clarified that the 2006 amendments to the Rule are consistent with its original intent of prohibiting the circumstantial use of character evidence in civil cases, "even where the case is closely related to criminal charges." Fed. R. Evid. 404 Advisory Committee Notes, 2006. Thus, Peterson's argument under *Crumpton* must fail.

Alternatively, Peterson submits that the evidence is permitted under Fed. R. Evid. 608(a) inasmuch as the Government's witnesses have indirectly attacked the truthfulness of his claim that he had no knowledge of Johnson's alleged sexual harassment. Rule 608(a) provides that

4

> [t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise

Fed. R. Evid. 608(a). Peterson urges the Court to look to the interpretation of Rule 608(a) by the Third Circuit Court of Appeals in *Renda v. King*, 347 F.3d 550 (3rd Cir. 2003), as a basis for allowing the testimony of his character witnesses. There, the court found that the district court abused its discretion in excluding evidence of a state trooper's character for truthfulness, where the plaintiff's counsel described the officer during an opening statement as a person who was generally corrupt and untruthful in the execution of his official police duties. *Id* at 554-55. The *Renda* court drew a careful distinction between the motive to lie in a particular case and a person's general predisposition to be untruthful, finding only the latter category to open the door to counterproof of a person's good character:

> [E]vidence of bias does not open the door for evidence of good character for truthfulness . . . because evidence of bias only relates to a motive to lie in the particular case, not a general predisposition to lie. Similarly, prior inconsistent statements do not open the door for evidence of good character for truthfulness because there can be a number of reasons for the error, such as defects in knowledge or memory, a bias or interest to lie in this particular instance, or a general character trait for untruthfulness. Thus, although the inconsistency may be due to a dishonest character, it is not necessarily, or even probably, due to this cause. Thus, the relatively minor value of permitting a response to such an inference does not justify the cost of litigating the tangential issue of character for truthfulness.

*Id* at 554 (internal citations omitted). In the case at bar, the Government has neither questioned Peterson's overall character for truthfulness, nor has it characterized him as generally corrupt. Thus, *Renda* is inapposite to this case, in that it does not provide Peterson with any legitimate basis for admitting evidence of his good character under Rule 608(a).

Finally, Peterson submits that he should be allowed to present the testimony of three of his

5

former tenants (Cora Watson, Karen Blake, and Epsen Watson), all of whom would testify that despite having been evicted by for non-payment of rent, they were never sexually harassed or otherwise subjected to unwarranted discrimination by him. It is his position that he intends to use this evidence to rebut an inference that his claimed misconduct was intentionally discriminatory. As a basis for his request, Peterson cites *Connecticut v. Teal*, 457 U.S. 440, 454 (1982), where the U.S. Supreme Court held in a Title VII case that employees could still establish a prima facie case of racial discrimination even where the "bottom-line" result of an employer's promotional process reflected an appropriate racial balance. In reaching this conclusion, the *Teal* Court acknowledged its previous recognition that

> a nondiscriminatory 'bottom line' and an employer's good-faith efforts to achieve a nondiscriminatory work force, might in some cases assist an employer in rebutting the inference that particular action had been intentionally discriminatory: 'Proof that [a] work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent when that issue is yet to be decided.'

457 U.S. at 454 (citing *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 580 (1978)). Peterson also points to *Terrell v. Richter-Rosin,* No. 94-1458, 1996 WL 122639, *4 (6th Cir. March 19, 1996) (citing *Teal* as basis for allowing defendants in racial discrimination lawsuit under Fair Housing Act to present testimony that other African-American persons had been treated fairly). Based on this logic, the Court disagrees with the Government's contention that the proposed testimony from Peterson's prior tenants is irrelevant. To the contrary, the Court finds it probative of Peterson's knowledge, motive, and intent. Thus, the Court will permit Peterson to call the identified former tenants, so long as their testimony is not presented for impermissible purposes under Rule 404(a).

II.

In its second motion in limine, the Government seeks to exclude or limit the introduction of three categories of evidence that, in its judgement, are irrelevant and/or unfairly prejudicial; namely,

(1) prior misdemeanor convictions not involving dishonesty or false statement; (2) evictions by landlords other than the Defendants; and (3) aspects of the personal lives and families of the aggrieved witnesses.

As to the first category of evidence, the Court looks to Fed. R. Evid. 609(a)(1), which allows a party to attack the credibility of a witness under certain circumstances:

> evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . and (2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Fed. R. Evid. 609(a)(1). The examination of a witness under Rule 609 is subject to a determination under Fed. R. Evid. 403 that the probative value of the questioning is not substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, or undue delay.

Here, the Government seeks to preclude the Defendants from eliciting evidence that any of its witnesses have misdemeanor convictions for assault, driving while on a suspended license, carrying a concealed weapon and malicious use of a telephone. The primary basis for its argument is that none of these alleged criminal offenses involve acts of dishonesty or false statement as contemplated by Rule 609(a). Peterson appears to acknowledge that generally, in order to be admissible, a misdemeanor conviction of any proposed witness must involve an element of dishonesty or false statement. However, in response to evidence presented by the Government, Peterson may explore other convictions beyond 609(a) but the scope of his examination must be limited. Peterson may ask the witnesses about the date and overall nature of the conviction, but may not elicit details about the factual circumstances or underlying conduct of the offenses.

Next, the Government raises a challenge to the Defendants' ability to reference the aggrieved

parties' prior evictions by other landlords. Such evidence, the Government argues, could be used only as character evidence to suggest that these witnesses may have a propensity to be bad tenants. Thus, it seeks their collective exclusion inasmuch as any probative value of the evidence would be substantially outweighed by the danger of unfair prejudice.

On the other hand, Peterson contends that this evidence would be used under Fed. Evid. R. 404(b) to show that some of the witnesses had a pattern, plan and scheme of refusing to pay rent, and in responding to any subsequent eviction proceedings by claiming that the landlord had failed to satisfy its obligations under the law (e.g., repairs within the housing units). Peterson proposes to present evidence of this scheme through a series of eviction proceedings that took place in the 14-B District Court of Ypsilanti, Michigan wherein the claims against the landlords were dismissed for lack of merit. He argues that the evidence is also relevant to show the witnesses' motive and intent, and to rebut the Government's accusation that Johnson neglected to repair the rental properties and/or repeatedly withheld repairs unless tenants performed sexual favors.

Fed. Evid. R. 404(b) allows a party to introduce evidence of "other crimes, wrongs or acts," not to prove conduct in conformity with a particular character trait, but for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." After carefully considering the record, the Court finds that the evidence of prior evictions is relevant to the issues in this case under Rule 404(b), especially to the extent that the Government's expert identifies the prior evictions as one of the reasons that the aggrieved witnesses may have agreed to remain as tenants in the Defendants' housing. As outlined in Fed. R. Evid. 401, the test of relevance is whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, the existence of multiple eviction proceedings containing false

allegations against prior landlords make it more likely that the witnesses (1) had a common plan or scheme of fabricating reasons for the non-payment of rent, and (2) may have harbored a motive - a desire to avoid payment - for raising allegations against the Defendants here. Inasmuch as the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, Peterson may present evidence of the prior evictions under Rule 404(b).

As the final argument in this motion, the Government asks the Court, on Rule 403 grounds, to preclude the Defendants from attacking the credibility of the Government's witnesses "by asking about the parentage of their children and the criminal history of their boyfriends or spouses." (Government's Motion in Limine at 7). In the Government's view, such questions are calculated to embarrass the witnesses and would be unfairly prejudicial. The Court agrees with Peterson that, generally speaking, the circumstances of the aggrieved witnesses' lives and their emotional well-being are relevant to their claim for emotional distress damages. Nevertheless, Peterson offers no specific theory upon which he believes the witnesses' sexual histories are relevant to the issues presented by this lawsuit. Accordingly, this aspect of the Government's motion will be granted.

III.

In the Government's final motion in limine, it asks the Court to preclude the Defendants from introducing evidence or otherwise referring to the fact that one of the aggrieved witnesses, Barbara Scott, signed a release of any future claims against Peterson in an earlier state court eviction proceeding initiated by him.[2] According to paragraph seven (7) of the release, which Scott's attorney

---

[2] Peterson attempted to respond to the Government's argument, but did so in the form of a pleading that was filed untimely. Accordingly, the Court will not consider Peterson's response, and the Government's motion to strike the response is granted.

signed on her behalf pursuant to a consent order between Peterson and Scott, she agreed to

> fully release[ ] and discharge[ ] Ronnie Peterson his heirs, personal representatives, agents, successors, and assigns, jointly and severally, from all claims that she has or may have against them, known or unknown, contingent or accrued, including but not limited to the claims that have been or could have been made in the above referenced lawsuit, except for enforcing compliance with this Agreement.

(Consent Order at ¶ 7). The Government argues that, even assuming this release bars Scott from personally filing her own sexual harassment action against Peterson under the Fair Housing Act, it is not precluded from seeking damages on her behalf. The Government cites the Title VII case of *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) to support its argument. There, the Supreme Court held that the EEOC was not barred from pursuing victim-specific relief for an employee even though the employee had entered into a binding agreement with the employer to arbitrate such claims. The employee there never initiated the arbitration proceedings, but the EEOC nevertheless filed a lawsuit on his behalf based on violations of the Americans With Disabilities Act. The Court reasoned that the arbitration contract could not bind the EEOC since it was not a party to that agreement. Moreover, the Court opined that the EEOC may act to vindicate a public interest, not merely to provide relief that was designed to make the individual employee whole. *Waffle House* at 295-96.

The Government urges the Court to extend the reasoning of *Waffle House* beyond the Title VII context to the Fair Housing Act claims at issue here, inasmuch as the statutes are structurally similar and the Attorney General should not be precluded from bringing a lawsuit on behalf of the victims of unlawful discrimination. However, the Court need not resolve the legitimacy of this argument because it believes that the publication of the document in which Scott was a signatory is relevant to the questions of liability and damages. The existence of the release may impact the jury's view of the Defendants' level of culpability for the alleged discrimination, and any assessment of damages will be closely linked to the level and extent of their alleged harassment and/or omissions. Because

evidence of the release is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, this motion in limine by the Government must be denied.

IV.

Peterson and his co-Defendant, First Pitch Properties, filed a request with the Court to order a bifurcated trial on the issue of punitive damages under Fed. R. Civ. P. 42, which allows separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." Fed. R. Civ. P. 42. The Defendants believe that allowing evidence of their financial status during the liability and compensatory damages phase would be unfairly prejudicial to each of them. The thrust of their argument appears to be that (1) they cannot be held liable for punitive damages based on a theory of respondeat superior (which is the only theory of liability advanced against them), and (2) their financial status is wholly irrelevant and inadmissible on the underlying claims for liability and compensatory damages. Yet, aside from these broad characterizations, neither Peterson nor First Pitch provide any specific argument about the manner in which their interests will be prejudiced if the Court rejects their arguments and proceeds to address the issues during one trial. Accordingly, the Court agrees with the Government that the Defendants have not met their burden of proving that a bifurcated trial would promote convenience or avoid prejudice to the other party.

V.

For the reasons that have been stated above, the Government's motion in limine regarding Peterson's trial witnesses (Docket Entry No. 54) is granted in part and denied in part. While Peterson will not be precluded from presenting the testimony of those persons whose names appear on his witness list, he may not call witnesses Brenda Stumbo, Brenda McKinney or Shirley Brown to testify to his good character.

Additionally, the Government's motion in limine regarding the witnesses' personal histories

(Docket Entry No. 55) is granted in part and denied in part. Although Peterson may elicit limited testimony about the witnesses' prior convictions and eviction history, he is foreclosed from inquiring into their sexual history, for the reasons that have been outlined above.

The Government's motion in limine to preclude evidence of the release executed by Barbara Scott (Docket Entry No. 56) is denied. The Government's motion in limine regarding Johnson's trial witnesses (Docket Entry No. 57) is granted. The Government's motion to strike Peterson's response (Docket Entry No. 64) is granted. Finally, Peterson's request for a bifurcated trial on the issue of punitive damages (Docket Entry No. 71) is denied.

IT IS SO ORDERED.

Dated: July 27, 2010　　　　　　　　　　　　　　S/Julian Abele Cook, Jr.
　　　　Detroit, Michigan　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 27, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager